## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| PHET THEPHITHACK, | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | )   **CIVIL ACTION NO. 12-00398-KD-M** |
| | ) |
| ALLSTATE PROPERTY AND CASUALTY | ) |
| INSURANCE COMPANY | ) |
| | ) |
|     **Defendant.** | ) |

## ORDER

This action is before the Court on the Motions for Partial Summary Judgment filed by Plaintiff Phet Thephithack ("Thephithack") (Doc. 12) and Defendant Allstate Property and Casualty Insurance Company ("Allstate") (Doc. 20) pursuant to Rule 56 of the Federal Rules of Civil Procedure. Both motions have been fully briefed (Docs. 12-1, 18, 21, 35-37) and are ripe for adjudication. Upon consideration of the arguments and evidence (Docs. 12-2, 22, 35-1, 36-1) submitted by the parties, and for the reasons stated herein, the Court finds that both motions are due to be **DENIED**.

### I.    Procedural History

On May 16, 2012, Thephithack filed a Complaint against "Allstate Insurance Company" in the Circuit Court of Mobile County, Alabama, alleging claims for uninsured/underinsured motorist ("UM/UIM") coverage,[1] breach of contract, and bad faith arising from Allstate's failure to pay UM/UIM benefits to her pursuant to an insurance policy she held with Allstate. (Doc. 1-1 at 25-28). On June 15, 2012, Allstate removed Thephithack's claims to this Court pursuant to 28

---

[1] "As statutorily defined, '*un* insured motorist' includes '*under* insured' motorist." <u>Lowe v. Nationwide Ins. Co.</u>, 521 So. 2d 1309, 1309 n.1 (Ala. 1988) (citing Ala. Code § 32-7-23(b)).

U.S.C. § 1441.  (Doc. 1).  Such removal was timely pursuant to 28 U.S.C. § 1446, and the Court

has original jurisdiction due to diversity pursuant to 28 U.S.C. § 1332.  That same day, Allstate

filed its Answer denying liability as to all claims.  (Doc. 2).

On August 8, 2012, the Court bifurcated the contract claims from the extra-contractual

claims and stayed discovery as to all extra-contractual claims pending resolution of the contract

claims.  (Doc. 8).  On January 14, 2013, Thephithack filed her present motion requesting

summary judgment in her favor on her claims for UM/UIM coverage and breach of contract.

(Doc. 12).  On February 19, 2013, in addition to its Response in opposition to Thephithack's

motion (Docs. 18-19), Allstate filed its own motion requesting summary judgment in its favor on

Thephithack's contractual claims (Doc. 20).

## II.    Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  Rule 56(c) governs procedures and provides as follows:

> **(1) *Supporting Factual Positions.*** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>   (A)   citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>   (B)   showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> **(2) *Objection That a Fact Is Not Supported by Admissible Evidence.*** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> **(3) *Materials Not Cited.*** The court need consider only the cited materials, but it may consider other materials in the record.
>
> **(4) *Affidavits or Declarations.*** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that

would be admissible in evidence, and show that the affiant or declarant is
competent to testify on the matters stated.

Fed. R. Civ. P. 56(c).

The party seeking summary judgment bears the initial responsibility of informing the
district court of the basis for its motion and identifying those portions of the pleadings,
depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
any, which it believes demonstrate the absence of a genuine issue of material fact. Clark v.
Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477
U.S. 317, 323 (1986)). The mere existence of a factual dispute will not automatically necessitate
denial; rather, only factual disputes that are material preclude entry of summary judgment.
Lofton v. Sec'y of Dep't of Children & Family Servs., 358 F.3d 804, 809 (11th Cir. 2004).

If the non-moving party fails to make a sufficient showing on an essential element of its
case with respect to which it has the burden of proof, the moving party is entitled to summary
judgment. Celotex, 477 U.S. at 323. In reviewing whether the non-moving party has met its
burden, the Court must stop short of weighing the evidence and making credibility
determinations of the truth of the matter. Instead, the evidence of the non-movant is to be
believed, and all justifiable inferences are to be drawn in its favor. Tipton v. Bergrohr GMBH-
Siegen, 965 F.2d 994, 998-99 (11th Cir. 1992) (internal citations and quotations omitted).

" 'Cross-motions for summary judgment will not, in themselves, warrant the court in
granting summary judgment unless one of the parties is entitled to judgment as a matter of law
on facts that are not genuinely disputed . . . Nonetheless, cross-motions may be probative of the
non-existence of a factual dispute when . . . they demonstrate a basic agreement concerning what
legal theories and material facts are dispositive.' " United States v. Oakley, 744 F.2d 1553,
1555-56 (11th Cir. 1984) (quoting Bricklayers Int'l Union, Local 15 v. Stuart Plastering Co., 512

F.2d 1017 (5th Cir. 1975)) (per curiam) (second ellipsis added).   See also Wermager v. Cormorant Twp. Bd., 716 F.2d 1211, 1214 (8th Cir. 1983) ("[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits.").

### III.   Facts[2]

On April 25, 2010, Thephithack was involved in a motor vehicle accident in Mobile County, Alabama, when the van in which she was riding was struck by another car driven by Rachael White ("White").  (Complaint, Doc. 22-1 at 2, ¶ 3; Defendant's Admissions, Doc. 12-2 at 2-3; J. Lockett's Order, Doc. 22-4 at 2-3).  Thephithack and the other ten occupants of the van claimed injury due to the accident.  (Doc. 22-4).

At the time of the accident, First Acceptance Insurance Company, Inc. ("First Acceptance") provided a policy of insurance covering both White and Brian Drake ("Drake"), the owner of the car White was driving.  (Interpleader Complaint, Doc. 22-5 at 6-7, ¶¶ 22, 24).  On November 5, 2010, pursuant to Rule 22 of the Alabama Rules of Civil Procedure,[3] First

---

[2] The relevant facts in this case are largely undisputed, with the parties' arguments hinging on issues of law and interpretation of the evidence presented.  The parties are reminded, however, that " 'the "facts", as accepted at the summary judgment stage of the proceedings, may not be the "actual" facts of the case.' "  Cassady v. Donald, 447 F. App'x 28, 30 (11th Cir. 2011) (quoting Priester v. City of Riviera Beach, Fla., 208 F.3d 919, 926 n.3 (11th Cir. 2000) (internal citation omitted)) (per curiam).

[3] Ala. R. Civ. P. 22 states, in relevant part:

**(a) Plaintiff or Defendant.** Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability. It is not ground for objection to the joinder that the claims of the several claimants or the titles on which their claims depend do not have a common origin or are not identical but are adverse to and independent of one another or that the plaintiff avers that the plaintiff is not liable in whole or in part to any or all of the claimants. A defendant exposed to similar liability may obtain such interpleader by way of cross-claim or counterclaim. The provisions of this rule supplement and do not in any way limit the joinder of parties permitted in Rule 20.

**(b) Release From Liability; Deposit or Delivery.** Any party seeking interpleader, as provided in subdivision (a) of this rule, may deposit with the court the amount claimed,
(Continued)

Acceptance, "as insurer of" Drake and White, filed a Complaint in Interpleader in the Circuit Court of Mobile County, Case No. CV 10-1465.  (Doc. 22-5).  In initiating the interpleader action, First Acceptance sought, "on behalf of Brian Drake and Rachel Olivia White" and "[w]ithout admitting liability and specifically denying liability," to 1) deposit into the court $50,000, "the entirety of its available liability insurance proceeds for all bodily injury claims and property injury claims related thereto arising out of" the subject accident, 2) "join all claimants and potential claimants" of the funds and have the court adjudicate the various claimants' entitlement to the funds, and 3) obtain "a release and discharge of liability on behalf of itself and its insured, Brian Drake."[4]  (Doc. 22-5).

All eleven occupants of the van, including Thephithack, were parties to the interpleader action.  (Id.).  On November 17, 2010, Thephithack filed an "Answer and Claim to Proceeds" in the interpleader action, in which she "ma[d]e claim to all monies, request[ed] the Court to establish damages for all victims, and divide up the proceeds at issue as this Court deems just or the parties agree upon."  (Doc. 12-2, Plaintiff's Ex. C 4).

The driver of the van had a policy of underinsured motorist coverage with GEICO Insurance Company, which was also a party to the interpleader complaint.  (Doc. 22-5 at 2).  GEICO requested and was granted leave to interplead $20,000, the limits of its underinsured motorist coverage under the policy.  (Id.).  White was never made a party to the interpleader action.  (Id.; Doc. 22-4).

At the time of the accident, Thephithack had in effect a policy with Allstate for UM/UIM benefits.  (Defendant's Admissions, Doc. 12-2 at 2-3, ¶¶ 1, 4).  In relevant part, the policy states:

---

or deliver to the court or as otherwise directed by the court the property claimed, and the court may thereupon order such party discharged from liability as to such claims, and the action continued as between the claimants of such money or property . . .

[4] The Court's own review of the interpleader action docket reveals that First Acceptance later moved for and obtained a release only as to itself.

"[Allstate] will pay damages an insured person is legally entitled to recover from the owner or operator of an uninsured auto because of: bodily injury sustained by an insured person."  (Doc. 22-6 at 39, Part 3 "General Statement of Coverage").  Counsel for Thephithack sent Allstate a letter dated August 10, 2011, notifying it of the accident and making a claim for uninsured motorist benefits under Thephithack's policy.  (Dailey Letter, Doc. 12-2 at 25).  Allstate received notice of the accident on August 20, 2010.  (Defendant's Admissions, Doc. 12-2 at 3, ¶ 5).  Counsel for Thephithack also provided Allstate 1) copies of Thephithack's "dec sheet" and the police report of the accident on September 22, 2010, 2) copies of the interpleader complaint and Thephithack's answer on November 17, 2010, 3) "every medical bill, the police report, criminal records, and even work-product privilege material" on November 18, 2010, 4) another copy of Thephithack's answer on December 16, 2010,[5] and 5) notice of the May 19, 2011 "trial" of the interpleader action on February 14, 2011.  (Dailey Letters & Allstate Response, Doc. 12-2 at 26-27, 29-33, Plaintiff's Exs. C 2 - C 3, C 5 - C 9).

Allstate was not a party to the interpleader action and never attempted to intervene or otherwise participate.  (Docs. 22-4 & 22-5).  An Allstate representative wrote the following in response to counsel's letter informing Allstate of the "trial" date:

> Thank you for your recent letter informing me of the trial date set for May 19, 2011 – case #CV10-001465.  When the court has made the determination as to which claimants are due a portion of the tort-feasor's funds, which I believe is $50,000, please send me a copy of the final order so that I can make a proper offset of the tort-feasor's funds.  It appears that there are 16 defendants listed, so I don't expect that the offset will be much.
>
> I have the file ready to evaluate and when I have this information we will be able to bring this file to conclusion.  Thank you for your continued cooperation in this matter.

(Doc. 12-2 at 33, Plaintiff's Ex. C 9).

---

[5] In two cover letters used in forwarding Thephithack's answer, Thephithack's counsel characterized it as both an answer and counterclaim.  (Doc. 12-2 at 27, 30, Plaintiff's Exs. C 3, C 6).

In an order dated January 24, 2012, Mobile County Circuit Judge Lockett, who presided over the interpleader action, made findings of fact as to the injuries and expenses of the van occupants, determined compensatory damages sustained by each, and apportioned the interpled funds accordingly.  (Doc. 22-5).  With regard to Thephithack, Judge Lockett found as follows:

> Claimant PHET THEPHITHACK appeared at the hearing and testified with regard to the details of the accident as well as the extent of her injuries.  She was treated initially at Infirmary West and released with a diagnosis of contusion to her right leg.  She was given prescriptions for Flexril for spasms and Ultram for pain.  She presented 3 days later for chiropractor care.  She testified that she underwent chiropractic treatment from April 28, 2010 through June 14, 2010.  Her records reflect that she suffered from cervical thoracic and lumbar pain with muscle spasm.  Her condition gradually improved and she was able to return to work.  She testified that she missed one month of wages and the exhibits reflect that her lost wages were $3,000.00.  Her lost wages and her medical bills totaled $7,973.30.  After observing this claimant, listening to her testimony regarding her injuries and pain and suffering, the Court finds that she sustained compensatory damages in the amount of $25,000.000.

(Id. at 9-10, ¶ 10).

Judge Lockett ultimately awarded Thephithack $10,937.50 from the interpled funds.  (Id. at 15, ¶ I).  Judge Lockett also made the following findings:

> []The testimony and evidence submitted revealed that on the date of the accident, Rachael White, an insured under the First Acceptance policy[,] lost control of her vehicle, crossed a wide median and struck a van occupied by the eleven individual claimants.  The van struck by White's vehicle was traveling in the opposite direction.  When the Alabama State Troopers arrived on the scene, White appeared confused and unsteady on her feet. She failed all field sobriety tests and confessed to the investigating officer that she was on "meth."
>
> The record before the Court reveals that approximately 16 days before this accident White was indicted for possession of hydrocodone, which possession occurred on August 8, 2009.  Further, three months prior to the accident she was indicted for possession of Methamphetamine.  She subsequently pleaded guilty to both charges.
>
> The Court finds that White's conduct was reckless and wanton, and further finds that her wantonness was the proximate contributing cause of the injuries and damages of all of the claimants.
>
> . . .
>
> []The total compensatory damages in this case amount to $160,000.00.  The Court

finds that due to the extremely reckless conduct of First Acceptance's Insured, her wantonness would warrant a punitive damage award in the amount of $450,000.00.

(Id. at 3-4, 11, ¶¶ 1, 13).[6]

Counsel for Thephithack forwarded a copy of Judge Lockett's order to Allstate on January 25, 2012, requesting the limits of the policy, $100,000, "based upon the judgment." (Dailey Letter, Doc. 12-2 at 34).  To date, Allstate has paid no UM/UIM benefits to Thephithack.

## IV.    Analysis

### a.  Applicable Law

Before addressing the parties' substantive contentions, the Court must decide what law governs the claims in this diversity action.  "[A] federal court in a diversity case is required to apply the laws, including principles of conflict of laws, of the state in which the federal court sits."  Manuel v. Convergys Corp., 430 F.3d 1132, 1139 (11th Cir. 2005) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)).   Alabama courts follow the traditional conflict-of-law principle of lex loci contractus.  Lifestar Response of Ala., Inc. v. Admiral Ins. Co., 17 So. 3d 200, 213 (Ala. 2009).  Accordingly, in Alabama, contract claims are governed by the laws of the state where the contract was made, unless the contracting parties chose a particular state's laws to govern their agreement.  E.g., Cherry, Bekaert & Holland v. Brown, 582 So. 2d 502, 506 (Ala. 1991).

In this case, the insurance policy at issue provides that "any and all claims or disputes in any way related to this policy shall be governed by the laws of Alabama[,]" subject to certain inapplicable exceptions in the event that a covered loss occurred outside of Alabama.  (Doc. 22-6 at 20, Allstate's Ex. 6 - Insurance Policy).  Moreover, no party has argued that the law of any

---

[6]  The Court's own review of the interpleader action docket reveals that First Acceptance subsequently moved to have this language removed from Judge Lockett's order.  Said motion was denied without explanation.

other jurisdiction should apply to Thephithack's contractual claims.  Therefore, the Court will apply Alabama law to these claims.

### b.  Thephithack's Motion for Partial Summary Judgment

Allstate does not dispute that, at time of the underlying accident, Thephithack had a valid policy with it for UM/UIM benefits.  There is also no dispute that Allstate was given timely notice of the state interpleader action and never attempted to join the action.  The only issue in dispute with regard to Thephithack's motion is whether Allstate is obligated to pay UM/UIM benefits by the findings and conclusions in Judge Lockett's order.

"Alabama's uninsured-motorist statute, Ala. Code 1975, § 32-7-23, provides protection for persons who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom."  State Farm Mut. Auto. Ins. Co. v. Bennett, 974 So. 2d 959, 962 (Ala. 2007) (quotations omitted).  "Uninsured motorist coverage in Alabama is a hybrid in that it blends the features of both first-party and third-party coverage. The first-party aspect is evident in that the insured makes a claim under his own contract. At the same time, however, third-party liability principles also are operating in that the coverage requires the insured to be 'legally entitled' to collect-that is, the insured must be able to establish fault on the part of the uninsured motorist and must be able to prove the extent of the damages to which he or she would be entitled."  LeFevre v. Westberry, 590 So. 2d 154, 159 (Ala. 1991).  "Thus, the plaintiff's claim for UM benefits is dependent upon a determination, **that is binding on the UM–insurance carrier**, as to the extent, if any, of the tortfeasor's liability to the plaintiff."  Bailey v. Progressive Specialty Ins. Co., 72 So. 3d 587, 593 (Ala. 2011) (emphasis added).

Thephithack argues that she is entitled to summary judgment on her UM/UIM contract claims because Allstate is bound by Judge Lockett's determinations as to White's liability pursuant the procedure set forth in Lowe v. Nationwide Insurance Co., 521 So. 2d 1309 (Ala. 1988).  (Doc. 12-1 at 5-6).  In Lowe, the Alabama Supreme Court explicitly stated that it was

addressing the following issue:   "Whether an insured may file a claim for underinsured motorist coverage against his or her own insurer in the same lawsuit with the insured's claim against the alleged underinsured motorist and litigate all the issues in one proceeding. Put another way, must a motorist covered by a valid automobile liability policy of insurance, including uninsured motorist coverage, first sue the alleged negligent motorist and obtain a judgment prior to asserting a claim for underinsured motorist coverage?"   521 So. 2d at 1309 (quotation marks omitted).  The court then addressed that issue as follows:

> Three separate, underlying considerations are essential to our disposition of this first-impression case: 1) that of protecting the right of the insurer to know of, and participate in, the suit; 2) that of protecting the right of the insured to litigate all aspects of his claim in a single suit ("Separate trials of the same issues and facts are a waste of time and money, and should be avoided if possible," Wall v. Hodges, 465 So. 2d 359 (Ala. 1984)); and 3) that of protecting the liability phase of the trial from the introduction of extraneous and corrupting influences, namely, evidence of insurance. Robins Engineering, Inc. v. Cockrell, 354 So. 2d 1 (Ala. 1977).
>
> . . .
>
> We believe that each of the three relevant considerations can be accommodated in a manner substantially as suggested by the parties: A plaintiff is allowed *either* to join as a party defendant his own liability insurer in a suit against the underinsured motorist *or* merely to give it notice of the filing of the action against the motorist and of the possibility of a claim under the underinsured motorist coverage at the conclusion of the trial. If the insurer is named as a party, it would have the right, within a reasonable time after service of process, to elect *either* to participate in the trial (in which case its identity and the reason for its being involved are proper information for the jury), *or* not to participate in the trial (in which case no mention of it or its potential involvement is permitted by the trial court). Under either election, the insurer would be bound by the factfinder's decisions on the issues of liability and damages. If the insurer is not joined but merely is given notice of the filing of the action, it can decide *either* to intervene *or* to stay out of the case. The results of either choice parallel those set out above—where the insurer *is* joined as a party defendant . . .

Id.

Thephithack argues that, because Allstate was given timely notice of the state interpleader action, it is bound by Judge Lockett's determinations in that action, including those concerning White's liability and the amount of damages assigned to her actions.  However, as

Allstate correctly argues, the plain language of the <u>Lowe</u> procedure indicates that it applies only to suits against the underinsured motorist. <u>See id.</u> ("A plaintiff is allowed *either* to join as a party defendant his own liability insurer **in a suit against the underinsured motorist** *or* merely to give it notice of the filing of the **action against the motorist** . . ." (boldfaced emphasis added)).

First, White was a not party to the interpleader action. Thephithack argues that White should be considered having been a party because First Acceptance filed the interpleader action "as insurer of" and "on behalf of Brian Drake and Rachel Olivia White," (Doc. 22-5 at 2, 7), thus essentially "standing in the shoes of White and/or []acting as her agent in filing the action." (Reply to Allstate's Response to Thephithack's Motion for Summary Judgment, Doc. 35 at 3-4). Thephithack cites no authority to support such a proposition, and the Court does not agree.

First Acceptance initiated the interpleader action for the limited purposes of depositing the limits of its liability insurance policy covering White and Drake, for having the court apportion said funds among the various claimants, and to obtain liability releases for itself and Drake. First Acceptance did so without seeking a determination of liability, "[w]ithout admitting liability and specifically denying liability[.]" (Doc. 22-5 at 7). In her answer to the interpleader action, Thephithack merely "ma[d]e claim to all monies, request[ed] the Court to establish damages for all victims, and divide up the proceeds at issue as this Court deems just or the parties agree upon." (Doc. 12-2, Plaintiff's Ex. C 4). Though Thephithack attempts to characterize her answer as also constituting a counterclaim (Doc. 12-2 at 27, 30, Plaintiff's Exs. C 3, C 6), nothing in her answer could be construed as a claim against White which would call for a determination of either her fault in the underlying accident or the extent of damages for which she would be liable.

Because the state interpleader action was not a suit against White, Allstate is not bound by Judge Lockett's determinations in that action pursuant to <u>Lowe</u>. The Court also agrees with

11

Allstate that Judge Lockett's order cannot otherwise be considered a judgment against White.[7]

As Thephithack has not shown that there has been "a determination[] that is binding on [Allstate]

as to the extent, if any, of [White]'s liability to [her,]" she has not demonstrate that she is entitled

to UM/UIM coverage as a matter of law.[8][9] <u>Bailey</u>, 72 So. 3d at 593.  Therefore, Thephithack's

motion for partial summary judgment is due to be **DENIED**.

### c.  Allstate's Motion for Partial Summary Judgment

Allstate's arguments in support of its motion for partial summary judgment are virtually

identical to those it offered in opposition to Thephithack's motion: that Judge Lockett's order is

---

[7] Thephithack also argues that the Allstate representative's letter quoted in Section III, *supra*, should be characterized as "an admission by Allstate confirming plaintiff's position" that " cements the agreement between the parties" and "DEFEATS THEIR ENTIRE CASE." (Doc. 35 at 1,4 ("all-caps" in original)).  Because Thephithack first raises this contention in her reply in support of her motion, the Court need not consider it.  <u>Carter v. Univ. of S. Ala. Children's & Women's Hosp.</u>, 510 F. Supp. 2d 596, 608 (S.D. Ala. 2007) (Steele, J.) ("The Court declines to consider new grounds for summary judgment raised for the first time in a reply brief. Such issues are not properly before it where, as here, they could and should have been presented previously and the movant has offered no explanation for the delay."). Regardless, admissions only relate to facts, not the applicable law.

[8] Because Thephithack has failed to show that Judge Lockett's findings are binding on Allstate, the Court does not address Allstate's alternative argument that the findings as to White are *dicta*.

[9] <u>See also</u> <u>Alfa Mut. Ins. Co. v. Barbee</u>, 693 So. 2d 498 (Ala. Civ. App. 1997).  In <u>Barbee</u>, State Farm Mutual Automobile Insurance Co. filed an interpleader action and paid the remaining limits into court to be divided among several defendants. Barbee was one of the defendants in the State Farm interpleader. Barbee had UM/UIM coverage under her Alfa policy. Alfa had notice of the interpleader action but took no action to intervene.
The trial court entered an order in the interpleader which stated, *inter alia*, that Alfa was obligated to pay Barbee $40,000.00 under the UM coverage. Alfa requested that the trial court remove any mention of Alfa from the order. The trial court only removed the sentence stating that Alfa had an obligation to Barbee but left other references to Alfa in the opinion.  Alfa appealed.  The Court of Civil Appeals resolved the appeal by stating:

> The doctrine of res judicata does not prevent Alfa from litigating its liability pursuant to Barbee's underinsured motorist coverage, because there has been no adjudication of Alfa's liability.  <u>Smith v. Union Bank & Trust Co.</u>, 653 So. 2d 933 (Ala. 1995).  Neither would the doctrine of collateral estoppel prevent Alfa from litigating its liability, because the issue of its liability pursuant to Barbee's underinsured motorist coverage was not litigated in State Farm's interpleader action.  <u>Id.</u>

<u>Id.</u> at 500.
There was no mention made that the principles enunciated in <u>Lowe</u> (decided in 1988) applied.

neither a judgment nor binding on it pursuant to <u>Lowe</u> and thus does not make Thephithack "legally entitled to recover" from White. While the Court agrees, <u>see</u> *supra*, Allstate has failed to explain how such determinations would entitle it to judgment as a matter of law on Thephithack's UM/UIM coverage claim.

Allstate appears to suggest that Thephithack cannot show she is "legally entitled to recover" UM/UIM benefits because she has not obtain a monetary judgment against White or Drake. However, "Alabama law does not require, as a prerequisite to the recovery of uninsured-motorist benefits, that the insured sue and obtain a judgment against the uninsured motorist." <u>State Farm Mut. Auto. Ins. Co. v. Bennett</u>, 974 So. 2d 959, 963 (Ala. 2007) (citing <u>Ex parte State Farm Mut. Auto. Ins. Co.</u>, 893 So.2d 1111, 1115 (Ala. 2004) (citing <u>State Farm Fire & Cas. Co. v. Lambert</u>, 285 So. 2d 917, 919 (Ala. 1973))). In support of its contention, Allstate cites to the Alabama Supreme Court's remark in <u>Nationwide Mutual Fire Insurance Co. v. Austin</u>, 34 So. 3d 1238, 1245 (Ala. 2009) that "the only actual measure of 'damages ... due by law' from [the tortfeasor] to the [UM claimants] that has been established in this case is the measure that the jury actually awarded." Contrary to Allstate's contention, this statement does not stand for the proposition that a jury award or other monetary judgment is the only way to ever prove legal entitlement to recovery – only that it was the sole means on the record in that case.

"A motorist '*legally entitled* to recover damages' under § 32-7-23 is one who presents facts sufficient to prove that the motorist was involved in an accident under circumstances that would entitle the motorist to uninsured-motorist coverage. Such a motorist is 'legally entitled' to damages if the motorist meets his or her burden of presenting substantial evidence to survive a motion for a summary judgment or a judgment as a matter of law and the fact-finder is reasonably satisfied from the evidence that the motorist should recover damages. <u>See</u> § 12-21-12, Ala. Code 1975." <u>Walker v. GuideOne Specialty Mut. Ins. Co.</u>, 834 So. 2d 769, 772 (Ala. 2002). Whether an insured is " 'legally entitled to recover' under the uninsured-motorist statute 'depends entirely on the merits of the insured's claim against the tortfeasor under the laws of the

state.' " <u>Kendall v. United Servs. Auto. Ass'n</u>, 23 So. 3d 1119, 1125 (Ala. 2009) (quoting <u>State Farm Mut. Auto. Ins. Co. v. Causey</u>, 509 F. Supp. 2d 1026, 1030 (M.D. Ala. 2007) (interpreting <u>Ex parte Carlton</u>, 867 So. 2d 332 (Ala. 2003))).   " '[T]he insured must be able to establish fault on the part of the uninsured motorist, which gives rise to damages, and must be able to prove the extent of those damages.  In a direct action by the insured against the insurer, the insured has the burden of proving in this regard that the other motorist was uninsured, legally liable for damage to the insured, and the amount of this liability.' " <u>Ex parte Carlton</u>, 867 So. 2d 332, 334 (Ala. 2003) (quoting <u>State Farm Mut. Auto. Ins. Co. v. Griffin</u>, 286 So. 2d 302, 306 (Ala. Civ. App. 1973)).[10]

Allstate makes no issue of whether White is an uninsured/underinsured motorist, nor does it appear to dispute that White was at fault in the underlying accident (<u>See</u> Doc. 12-2 at 4, ¶ 10 ("It is admitted that based on information known to Allstate at this time that the accident was the fault of Rachel White.")).  Also, Allstate neither makes any argument nor presents any evidence that Thephithack did not sustain damages or that the damages have been adequately compensated.

However, the problem is, as the case now stands, there is no mechanism for making the determination of fault or damages.  Thephithack has not sufficiently pled a direct action against Allstate.  Rather, the UM/UIM coverage claim is dependent on Judge Lockett's order and merely restates the breach-of-contract claim.  (<u>See</u> Doc. 1-1 at 26-27)

---

[10] "[I]n a direct action against an insurer for uninsured-motorist benefits the insurer []ha[s] available, in addition to policy defenses, the *substantive defenses* that would have been available to the uninsured motorist."  <u>State Farm Mut. Auto. Ins. Co. v. Bennett</u>, 974 So. 2d 959, 962 (Ala. 2007) (quotations omitted).  Though Allstate has not argued as such, the Court will point out that an insurer may not assert as a defense to denying UM/UIM coverage that the statute of limitations has run on a claimant's causes of action against the tortfeasor motorist.  <u>Ex parte Mason</u>, 982 So. 2d 520, 521 (Ala. 2007) ("In [State Farm Mut. Auto. Ins. Co. v. ]Bennett], 974 So. 2d 959 (Ala. 2007)], this Court held that an uninsured motorist's statute-of-limitations defense, a procedural defense, is not available to State Farm in defense of a claim for uninsured-motorist benefits . . . Only the uninsured motorist's substantive defenses are available to the insurer.").

Moreover, Thephithack's breach-of-contract and, by extension, bad-faith claims are premature. Although an insured's " 'legal[ ] entitle [ment] to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom,' § 32–7–23(a), Ala. Code 1975, is dependent upon establishing the tortfeasor's fault and the certainty of damages, the claim for UM benefits is based on the contractual obligations of the insurance policy." Bailey, 72 So. 3d at 593. Put another way, "[a]lthough the tortfeasor's liability triggers the insurer's obligation to pay, that liability serves only to establish that the insured 'is entitled to recovery under the terms of the policy.' " Ex parte Barnett, 978 So. 2d 729, 734 (Ala. 2007) (quoting Howard v. Ala. Farm Bureau Mut. Cas. Ins. Co., 373 So. 2d 628, 629 (Ala. 1979)).

As Allstate points out, the "Uninsured Motorists Insurance" portion of its policy with Thephithack tracks the language of Ala. Code § 32-7-23(a), stating that Allstate "will pay damages an insured person is legally entitled to recover from the owner or operator of an uninsured auto because of: bodily injury sustained by an insured person." (Doc. 22-6 at 39, Part 3 "General Statement of Coverage"). The policy does not define "legally entitled," but the Court will assume that Allstate does not intend this provision be interpreted more narrowly than the language of the statute.[11] In any event, the Alabama Supreme Court has held: " 'There can be no breach of an insurance contract providing uninsured-motorist coverage until the insureds prove that they are legally entitled to recover.' " Pontius v. State Farm Mut. Auto. Ins. Co., 915 So. 2d 557, 564 (Ala. 2005) (quoting Ex parte State Farm Mut. Auto. Ins. Co., 893 So. 2d 1111, 1115 (Ala. 2004). Moreover, "[b]reach of an insurance contract is an element of a bad-faith-failure-to-pay claim."[12] Id. Therefore, "[w]ithout a determination of whether liability exists on the part

---

[11] "A policy exclusion that is more restrictive than the uninsured motorist statute is void and unenforceable." E.g., Walker v. GuideOne Specialty Mut. Ins. Co., 834 So. 2d 769, 772 (Ala. 2002) (quotation marks and alterations omitted).

[12] In Alabama, the substantive rights of tort claimants are determined according to the laws of the (Continued)

of the underinsured motorist and the extent of the plaintiff's damages, a claim of bad-faith failure to pay or breach of contract is premature." Id. As there has been no determination binding on Allstate establishing that Thephithack is legally entitled to recover from White, see supra, her claims for breach of contract and bad faith are not yet ripe.[13] See Pontius, 915 So. 2d at 564.

### V.    Conclusion

In accordance with the foregoing analysis, it is **ORDERED** that Plaintiff Thephithack's Motion for Partial Summary Judgment (Doc. 12) is **DENIED** and that Defendant Allstate's Motion for Partial Summary Judgment (Doc. 20) is **DENIED**. It is further **ORDERED** that, on or before **Wednesday, May 1, 2013**, Thephithack shall file an amended complaint that adequately claims a direct action for UM/UIM coverage.[14] Otherwise, the Court will entertain a motion to dismiss the case for failure to state a claim. Should Thephithack file an amended complaint as instructed, Allstate shall file an answer to the amended complaint in accordance with the Federal Rules of Civil Procedure.

**DONE** and **ORDERED** this the **17th** day of **April 2013**.

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**

---

state where their alleged injuries occurred. Fitts v. Minn. Mining & Mfg. Co., 581 So. 2d 819, 820 (Ala. 1991). As the record indicates that Thephithack has at all relevant times been an Alabama resident, Alabama law will also apply to her bad-faith claims.

[13] The Court also notes that "there can be no bad-faith action based on conduct arising before the uninsured motorist's liability is established and damages are fixed; therefore, 'there can be no action based on the tort of bad faith based on conduct arising prior to that time, only for subsequent bad faith conduct.' Accordingly, any claims alleging bad-faith failure to pay an insurance claim or breach of contract based on [an insurer]'s failure to pay UIM benefits must be based on conduct arising after the [tortfeasor's] liability was established and damages fixed." Pontius, 915 So. 2d at 565 (quoting LeFevre v. Westberry, 590 So. 2d 154, 159 (Ala. 1991)) (internal citation omitted).

[14] In doing so, Thephithack should indicate the amount in controversy so that this Court can consider whether diversity jurisdiction is present.